UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                         :

ERIK H. GORDON, RYAN GIUNTA       :
and M101 GROUP LLC,             :

                         :  15 Civ. 9935 (NRB) (NS)
          Plaintiffs,        :

                         :

    – against –          :

                         :

JAMES T. DINGMAN, OUT WEST   :
HOSPITALITY LTD. and THE TRAVELLER'S  :
BEACH RESTAURANT LTD.,       :

                         :

         Defendants.       :

                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST ALL DEFENDANTS

**SULLIVAN & WORCESTER LLP**

1633 Broadway
New York, New York 10019
Telephone: (212) 660-3000
Facsimile: (212) 660-3001

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

PROCEDURAL HISTORY ............................................................................................. 2

ARGUMENT ................................................................................................................. 5

I.      Defendants' Actions Warrant Entry of a Default Judgment ............................... 5

II.     Plaintiffs are Entitled to Judgment in their Favor ............................................. 5

        A.     Plaintiff Gordon is Entitled to a Default Judgment ................................ 6

                1.    *Gordon Asserts Four Claims for Relief* ................................... 6

                2.    *The Uncontroverted Allegations and Evidence* ....................... 7

                3.    *Gordon's Claims are Adequately Pled* ..................................... 9

                4.    *Gordon's Damages are Proven on the Current Record* ......... 11

        B.     Plaintiffs Giunta and M101 Group are Entitled to a Default Judgment .............. 12

                1.    *Giunta and M101 Group Assert one Claim for Relief* ............ 12

                2.    *The Uncontroverted Allegations and Evidence* ..................... 12

                3.    *Giunta's and M101 Group's Claim is Adequately Pled* ......... 13

                4.    *Giunta's and M101 Group's Damages are Proven on the Current Record* ................................................................. 14

Conclusion ..................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Am. Cas. Co. v. Morgan-White Underwriters, Inc.*,
   No. 02 Civ. 931, 2003 U.S. Dist. LEXIS 25135 (S.D.N.Y. Sept. 30, 2003) ..............................6

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991)..........................................................................................................................11

*City of N.Y. v. Mickalis Pawn Shop, LLC*,
   645 F.3d 114 (2d Cir. 2011)........................................................................................................5, 6

*Enron Oil Corp. v. Diakuhara*,
   10 F.3d 90 (2d Cir. 1993)................................................................................................................5

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*,
   783 F.3d 395 (2d Cir. 2015)..........................................................................................................10

*Finkel v. Romanowicz*,
   577 F.3d 79 (2d Cir. 2009)..........................................................................................................5-6

*Kwon v. Leg Res., Inc.*,
   15 Civ. 9658 (RWL), 2018 U.S. Dist. LEXIS 80070 (S.D.N.Y. May 7, 2018) .........................5

*SEC v. Anticevic*,
   No. 05 CV 6991 (KMW), 2010 U.S. Dist. LEXIS 50207 (S.D.N.Y. May 14, 2010) .................6

*Sokolow, Dunaud, Mercadier & Carreras LLP v. Lacher*,
   299 A.D.2d 64 (1st Dep't 2002) ...................................................................................................10

*Wechsler v. Hunt Health Sys.*,
   330 F. Supp. 2d 383 (S.D.N.Y. 2004)......................................................................................10, 13

**Statutes**

Fed. R. Civ. P. 34 ..................................................................................................................................4

Plaintiffs Erik H. Gordon ("Gordon"), Ryan Giunta ("Giunta") and M101 Group LLC ("M101 Group" and, together with Gordon and Giunta, "Plaintiffs"), upon leave of the Court, bring this motion for entry of a default judgment against defendants James T. Dingman ("Dingman"), Out West Hospitality Ltd. ("OWH") and The Traveller's Beach Restaurant Ltd. ("Traveller's" and, together with Dingman and OWH, "Defendants").

This case arises out of Dingman's scheme to defraud Gordon and steal money and services from Giunta and M101 Group in connection with the development of a hospitality conglomerate in the Bahamas.  Defendants OWH and Traveller's are two entities through which Dingman perpetrated his scheme.

As set forth below, while this case has been pending since in or about December 2015, Dingman effectively has withdrawn himself and his companies from the case since August 2017 when he ceased all communication with his counsel.  Then, in July 2018, the Court relieved Defendants' counsel and directed OWH and Traveller's to retain new counsel by August 15, 2018 under penalty of possible default judgment.  The Court also ordered that the Second Amended Complaint[1] be the operative complaint in the case; the deadline for Dingman to answer, move or otherwise respond to the SAC was August 1, 2018.  Finally, Plaintiffs served document requests on Dingman, responses to which were due no later than August 20, 2018.

As of the date of this filing: (i) OWH and Traveller's have failed to retain new counsel; (i) Dingman has failed to answer, move or otherwise respond to the SAC; and (iii) Dingman has failed to respond to Plaintiffs' document requests.

Entry of a default judgment against each of the Defendants is warranted: each has knowingly and intentionally abandoned a defense in this case.  Plaintiffs' claims are adequately

---

[1]  The Second Amended Complaint (the "SAC") is attached as Exhibit A to the Declaration of Clark A. Freeman, dated Oct. 12, 2018 (the "Freeman Decl.").

pled, and proven by the evidence submitted in the form of declarations from Gordon and Giunta. Finally, damages on each of Plaintiffs' claims can be proven on the present record, making a hearing on damages unnecessary.  For all these reasons, Plaintiffs respectfully requests that the Court enter a default judgment against each of the Defendants on Plaintiffs' respective claims as set forth below.

## PROCEDURAL HISTORY

This action was commenced on December 21, 2015 by fourteen plaintiffs against twelve defendants, including the current Defendants. (ECF 10).  An Amended Complaint was filed on January 14, 2016 (ECF 12).

On January 26, 2016, each of the Defendants was each served with, *inter alia*, the Amended Summons and the First Amended Complaint.  *See* Freeman Decl. Ex. B.  After initially failing to timely answer the First Amended Complaint, Defendants appeared and filed a motion seeking dismissal in favor of the Bahamas.  (ECF 38-42).

Subsequently, twelve of the fourteen plaintiffs voluntarily dismissed their claims, leaving only two plaintiffs, Gordon and Giunta.  *See* Freeman Decl. Ex. C.  Plaintiffs filed opposition to the motion to dismiss and simultaneously filed their proposed SAC, which added M101 Group as a plaintiff.  (ECF 61-67).

On March 29, 2017, the Court dismissed the case for lack of subject matter jurisdiction under 28 U.S.C. § 1331 (ECF 82).  *See* Freeman Decl. Ex. D.  Plaintiffs appealed the dismissal. *See* Freeman Decl. Ex. E.

After the Court dismissed the case, Dingman's counsel notified Dingman that they would no longer represent him or any other defendants because Dingman had stopped paying his bills and refused to disclose his whereabouts.  *See* Freeman Decl. Ex. F at ¶ 3.  Nevertheless,

Dingman's counsel concluded that it was their professional obligation to represent Defendants on appeal. *See* Freeman Decl. Ex. F at ¶ 3. By August 2017, Dingman ceased all communication with his counsel. *See* Freeman Decl. Ex. F at ¶ 5.

On appeal the U.S. Court of Appeals for the Second Circuit reversed and remanded. On July 12, 2018, a Mandate issued. *See* Freeman Decl. Ex. G.

## DEFENDANTS' DEFAULT

On remand, Defendants' counsel moved to withdraw because, among other things, Dingman had not paid his bills and had not communicated with his counsel since August 2017. *See* Freeman Decl. Ex. F at ¶ 3.

By order dated July 16, 2018, the Court relieved counsel for the Defendants and ordered that "any corporate entities named as defendants in the complaint shall retain new counsel within 30 days of this order and that failure to do so will result in the entry of a default judgment against them." *See* Freeman Decl. Ex. H. That same day, the Court issued a separate order declaring that the proposed SAC "is deemed the operative complaint in this matter." *See* Freeman Decl. Ex. I.

On July 18, 2018, Plaintiffs served Dingman with the SAC by sending it to the same email address used by his former counsel to give Dingman notice of its motion to withdraw as attorney of record. *See* Freeman Decl. Ex. J. This email address is the only contact information for Dingman that Plaintiffs have. *See* Freeman Decl. ¶ 11.

As of this date of this filing, OWH and Traveller's have failed to appear by counsel, and their deadline to do so -- August 15, 2018 -- has passed. *See* Freeman Decl. ¶ 12.

As of the date of this filing, Dingman has failed to answer, move or otherwise respond to the SAC, and his deadline to do so under Rule 15 of the Federal Rules of Civil Procedure -- August 1, 2018 -- has passed.  *See* Freeman Decl. ¶ 13.

On July 19, 2018, Plaintiffs served document requests on Dingman by sending them to the same email address used by his former counsel to give notice to Dingman of their motion to withdraw as counsel of record.  *See* Freeman Decl. ¶ 14.  The deadline for Dingman to respond to those document requests was August 20, 2018.  *See* Fed. R. Civ. P. 34.  As of the date of this filing, Dingman has failed to respond to those document requests.  *See* Freeman Decl. ¶ 14.

By Order dated September 17, 2018 (ECF 98), the Court granted Plaintiffs leave to move for a default judgment against Dingman.  *See* Freeman Decl. Ex. K.

On October 12, 2018, the Clerk of the Court issued a Certificate of Default certifying that the Defendants are in default in this action.  *See* Freeman Decl. Ex. L.

Also on October 12, 2018, the U.S. District Court for the Southern District of New York docketed costs taxed by Second Circuit Court of Appeals as to its July 12, 2018 Mandate in the amount of $1,482.20 in favor of Giunta and Gordon and against James T Dingman, BahaMex Ltd., Out West Hospitality Ltd., Island Smoke House Ltd., The Traveller's Restaurant Ltd., 25 North Ltd.  *See* Freeman Decl. Ex. M.

Plaintiffs now move for entry of a default judgment against each of defendants Dingman, OWH and Traveller's.  In Compliance with Local Rule 55.2, as-filed copies of these motion papers will be emailed immediately to Dingman at the email address used by his former counsel to give Dingman notice of their motion to withdraw as counsel of record.  Proof of service will be filed with the Court.

4

## ARGUMENT

### I.    Defendants' Actions Warrant Entry of a Default Judgment

"The decision whether to enter default judgment is committed to the district court's discretion." *Kwon v. Leg Res., Inc.*, No. 15 Civ. 9658 (RWL), 2018 U.S. Dist. LEXIS 80070, at *5 (S.D.N.Y. May 7, 2018) (quoting *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015)). Entry of default is a "useful remedy when a litigant is confronted by an obstructionist adversary" and can "play a constructive role in maintaining the orderly and efficient administration of justice." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

Here, the Court should exercise its discretion to enter a default judgment. As to Dingman, while he initially appeared in the action, he effectively disappeared in August 2017, over one year ago, when he ceased all communication with his counsel and failed to participate in the defense of the case. Once the appeal was over and his counsel was relieved, Dingman failed to answer, move or otherwise respond to the SAC and failed to respond to Plaintiffs' document requests. Instead of defending this case, Dingman has decided to ignore it. Under these circumstances, entry of a default judgment against Dingman is warranted.

The Court also should enter a default judgment against each of defendants OWH and Traveller's. Those defendants already were warned that their failure to retain counsel by August 15, 2018 would result in the entry of a default judgment. They still have failed to retain counsel as of the filing of these papers. Entry of a default judgment is warranted.

### II.    Plaintiffs are Entitled to Judgment in their Favor

"It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint." *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011); *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir.

2009) (Where a defendant defaults, "a court is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor."). So long as the Court is satisfied that the complaint states a claim for relief, the Court may enter judgment against the defendant. *See Mickalis Pawn Shop, LLC*, 645 F.3d at 137 (explaining that on a motion for entry of a default a court should determine whether plaintiff's allegations and submissions establish liability).

As to the relief to be awarded, "[a] court can make a determination regarding an injunction, damages, and penalties on the basis of the evidence before it, including the complaints and affidavits submitted by plaintiff, as long as the court is ensured that the evidence provides a basis for the requested relief." *SEC v. Anticevic*, No. 05 CV 6991 (KMW), 2010 U.S. Dist. LEXIS 50207, at *17-18 (S.D.N.Y. May 14, 2010). A district court may conduct a hearing to determine damages but is not required to do so where a sufficient basis on which to make a damages calculation exists without a hearing. *See Am. Cas. Co. v. Morgan-White Underwriters, Inc.*, 02 Civ. 931, 2003 U.S. Dist. LEXIS 25135, at *12 (S.D.N.Y. Sept. 30, 2003).

Here, Plaintiffs Gordon, Giunta and M101 Group have satisfied the requirements for entry of a default judgment against each of the Defendants and are entitled to the relief as set forth below.

A.   Plaintiff Gordon is Entitled to a Default Judgment

1.   *Gordon Asserts Four Claims for Relief*

Gordon asserts four claims against the Defendants: violations of section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 thereunder, breach of contract, fraudulent inducement, and fraud.

2.      *The Uncontroverted Allegations and Evidence*

In or about November 2013, Dingman first contacted Gordon -- Giunta's and Dingman's mutual friend -- about investing in OWH, the purported holding company of Dingman's Bahamian hospitality conglomerate.  *See* SAC ¶ 21; Declaration of Erik H. Gordon, dated Oct. 7, 2016 ("Gordon Decl.") ¶ 6.[2]  From in or about November 1, 2013 through in or about November 22, 2013, Dingman and Gordon met for lunch, at least two times per week, at restaurants in Manhattan.  *See* SAC ¶ 22; Gordon Decl. ¶ 7.  During the same period, Dingman and Gordon met at least once at Dingman's family's home in Manhattan.  *See id.*  Dingman and Gordon also had several lengthy phone calls (these lunches, meetings and phone conversations hereinafter referred to collectively as the "November 2013 Communications").  *See id.*

During the November 2013 Communications, Dingman, on behalf of himself, OWH and Traveller's, made various material misrepresentations in order to induce Gordon to invest in OWH and/or its purported subsidiaries in return for an equity stake in OWH.  *See* SAC ¶ 23; Gordon Decl. ¶¶ 8-11.

Dingman represented, among other things that:

- OWH was the parent company of Dingman's other Bahamian businesses, owning 100 percent of the shares of his other companies;

- OWH's purported subsidiaries were operating at a profit, and that each, with one exception, was cash positive;

- Dingman personally had invested significant sums in OWH, suggesting that the Company was already well-capitalized;

- Gordon's shares would be registered with the appropriate Bahamian authorities;

- Any investment in OWH or any of its purported subsidiaries would be in consideration for a proportionate equity stake in OWH; and

---

[2]  The Gordon Decl. is attached as Exhibit O to the Freeman Decl.

- Upon completion of Gordon's planned investment schedule, Gordon and Dingman would each be equal owners of the entirety of OWH's equity, except for the sweat equity stake to be held by Giunta.

*See* SAC ¶¶ 24-28; Gordon Decl. ¶¶ 8-10.  Each of these representations was false.  *See id.*

During the November 2013 Communications, Dingman offered -- and Gordon accepted -- that Gordon would invest capital in OWH or its purported subsidiaries in exchange for a fifty percent equity stake (forty-five percent upon recognition of Giunta's ten percent equity stake) in OWH.  *See* SAC ¶ 29; Gordon Decl. ¶ 12.

On or about November 22, 2013, relying on his and Dingman's agreement, Gordon wired $100,000 to an account to which Dingman directed him.  *See* SAC ¶ 30; Gordon Decl. ¶ 13.

In an acknowledgment letter on OWH letterhead, Dingman made the following representations: "This letter is to acknowledge the receipt of 3 wires in the total amount $100,000.00 USD made out to Traveller's Restaurant.  OWH, Ltd intends to use the funds to purchase material and general operations.  The investment will represent a 10 percent stake in the holding company of Out west Hospitallity [sic]. We appreciate your support and investment in the holding company."  *See* SAC ¶ 31; Gordon Decl. ¶ 14.

These representations were false, among other reasons, because (i) OWH did not own Traveller's and had not issued or registered shares to anyone other than Dingman and/or his agents and (ii) Gordon's funds were not used exclusively to purchase material and fund general operations of OWH, but rather, were used towards Dingman's other business and personal expenses.  *See* SAC ¶ 32.

On or about December 17, 2013, Gordon wired $150,000 to an account to which Dingman directed him.  *See* SAC ¶ 33; Gordon Decl. ¶ 15.  Dingman sent Gordon a nearly identical acknowledgement letter on OWH letterhead containing similar misrepresentations.  *See*

8

*id.*  From in or about January 2014 through in or about April 2014, Dingman and Gordon met regularly for lunch in Manhattan.  *See* SAC ¶ 35; Gordon Decl. ¶ 16.  During these lunches, Dingman continued to repeat and reiterate his misrepresentations from the November 2013 Communications.  *See id.*

On March 7, 2014, over lunch at the Beverly Hills Hotel in California, Dingman asked Gordon to wire $18,000 for him as a personal loan.  *See* SAC 37; Gordon Decl. ¶ 17.  Gordon later learned that the money was to cover the payroll for one of Dingman's companies.  *See id.*  On or about March 7, 2014, Gordon wired $18,000 to the payroll company for one of Dingman's companies.  *See id.*  Dingman never repaid Gordon and falsely told Gordon that he would count the $18,000 toward Gordon's equity in OWH.  *See id.*

On March 12, 2014, Gordon wired an additional $75,000 as an investment in OWH.  *See* SAC 38; Gordon Decl. ¶ 18.

On or about September 9, 2014, Dingman wrote a joint letter to all OWH investors informing them that all businesses had been closed.  *See* SAC ¶ 44.  The existence of other equity holders was a surprise to Gordon due to Dingman's prior representations that only Gordon, Dingman and Giunta held equity interests in OWH.  *See* SAC ¶ 44.  Neither OWH nor Traveller's currently has any assets or operations.  *See* SAC ¶¶ 11-12.

Gordon demanded that Dingman return his $343,000 investment.  *See* SAC ¶ 45.  Dingman has never returned any portion of Gordon's money.  *See* SAC ¶ 45.

### 3. *Gordon's Claims are Adequately Pled*

Gordon's Exchange Act, fraudulent inducement and fraud claims are adequately pled.

To make a out claim based on a misrepresentation or omission in violation of section 10(b) of the Exchange Act and Rule 10b-5 thereunder, a plaintiff must show that the "defendant

(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury." *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 491 (S.D.N.Y. 2005).  The elements of claims for fraud and fraudulent inducement under New York law are similar, but the misrepresentations or omissions need not relate to the purchase or sale of securities.[3]

The admitted allegations in the SAC and uncontroverted Gordon Declaration establish that: (i) Dingman, on behalf of himself and OWH and Traveller's, made the misstatements summarized above regarding OWH and its subsidiaries; (ii) those misstatements were material because, among other things, they misrepresented the financial condition and assets of OWH; (iii) Defendants knowingly and intentionally made these misrepresentations to induce Gordon to invest in OWH; (iv) Defendants represented to Gordon that Gordon would be purchasing equity shares of OWH, which qualify as securities under the Exchange Act; (v) Gordon relied on these misrepresentations; and (vi) Gordon's reliance was the proximate cause of his losing his investment of $343,000.  Thus, Gordon has pled (and proven) his Exchange Act, fraudulent inducement and fraud claims.

Gordon also has pled (and proven) his breach of contract claim.  "The elements of a breach of contract claim in New York are (1) the existence of a contract, (2) plaintiff's performance, (3) breach by the defendant, and (4) damages." *Wechsler v. Hunt Health Sys.*, 330 F. Supp. 2d 383, 403-04 (S.D.N.Y. 2004).

---

[3]  Under New York law, to plead both fraud and fraudulent inducement, a plaintiff must allege "(1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402 (2d Cir. 2015) (fraud); *see Sokolow, Dunaud, Mercadier & Carreras LLP v. Lacher*, 299 A.D.2d 64, 70 (1st Dep't 2002) (fraudulent inducement).

Here, Gordon had a contract with Defendants for the purchase and sale of securities in OWH.  Gordon performed by paying the purchase price to Defendants.  Defendants breached the contract by failing to deliver the securities to Gordon or return Gordon's money.  As a result, Gordon has been damaged.

### 4.   *Gordon's Damages are Proven on the Current Record*

The amount of Gordon's damages on each of Gordon's claims is substantively the same and are proven on the current record.  In total, Gordon invested $343,000 in OWH and its purported subsidiaries, but never received any shares in OWH.  Consequently, Defendants are liable to Gordon in at least the amount of $343,000.

Gordon also is entitled to prejudgment interest at the rate of nine percent pursuant to New York C.P.L.R. §§ 5001 & 5004 on his New York common law claims and at the maximum rate permitted by law on his Exchange Act claim.  Gordon further is entitled to post-judgment interest.

A hearing to determine damages is unnecessary.

Gordon respectfully requests that, in addition, the Court consider imposing a reasonable a reasonable amount of attorney's fees on Defendants.  The Court has the inherent authority to impose attorney's fees where a defendant acts in bad faith during a case.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 54-58 (1991) (affirming grant of attorneys' fees and expenses under the "bad faith exception" to the American Rule against fee shifting).  Here, Defendants intentionally abandoned a defense in the case over a year ago, dragged out the proceeding, and ultimately defaulted.  Such actions evidence bad faith warranting imposition of an amount of attorney's fees.

B.      Plaintiffs Giunta and M101 Group are Entitled to a Default Judgment

1.      *Giunta and M101 Group Assert one Claim for Relief*

Giunta and M101 jointly assert one breach of contract claim against Dingman.

2.      *The Uncontroverted Allegations and Evidence*

In or about September 2011, Giunta started his own consulting company.  *See* Declaration of Ryan Giunta, dated Oct. 7, 2016 (the "Giunta Decl."), at ¶¶ 3-5.[4]

On November 4, 2012, Dingman had a conversation with Giunta at Dingman's family home in Manhattan.  *See* Giunta Decl. ¶¶ 6-7.  During the meeting, Dingman offered to retain Giunta, through his consulting company, M101 Group, to provide consulting services in connection with his planned business venture at $150,000 per year.  *See* Giunta Decl. ¶ 8; SAC ¶ 15.  As additional compensation, Dingman offered Giunta an equity interest in the ultimate parent company for the hospitality conglomerate, which company had yet to be formed, but would eventually become OWH.  *See* SAC ¶ 15; Giunta Decl. ¶ 8.

Giunta accepted Dingman's offer.  *See* SAC ¶ 16; Giunta Decl. ¶ 11.  Prior to commencing work for Dingman, however, Giunta and M101 Group's agreement with Dingman was modified and the monthly payment reduced to $7,500.  *See* Declaration of Ryan Giunta, dated October 12, 2018 (the "Giunta 2018 Decl."), at ¶ 3.

From on or about February 2, 2013 through on or about May 8 2014, Giunta worked for Dingman.  *See* Giunta 2018 Decl. ¶ 5.  Despite all the work that Giunta performed, he was paid only $3,000 in compensation.  *See id.*

---

[4]  The Giunta Decl. is attached as Exhibit N to the Freeman Decl.

In November 2013, Dingman agreed to recognize Giunta's ten percent sweat equity interest in defendant Out West Hospitality Ltd., which interest had been promised to Giunta as additional compensation through M101 Group.  *See* Giunta 2018 Decl. ¶ 4.

As set forth above, on December 17, 2013, OWH sent a letter to Gordon stating that Gordon's $150,000 investment represented a ten percent stake in OWH (though OWH never issued shares to Gordon).  *See* SAC ¶ 33.  As of December 17, 2013, Giunta's equity stake in OWH therefore should be valued at $150,000.

Dingman has acknowledged his liability to Giunta on at least two occasions: in an April 22, 2014 email to Gordon in which he stated that "Ryan is owed money per my agreement with him" and in a September 25, 2014 email to Giunta in which he stated that Giunta is "[o]wed money for past services."  *See* Giunta Decl. Exs. A & B.

### 3.   *Giunta's and M101 Group's Claim is Adequately Pled*

Each element of Giunta's and M101 Group's claim for breach of contract is satisfied here.  *See Wechsler*, 330 F. Supp. 2d at 403-04 (setting forth elements of claim).  Giunta and M101 Group entered into a binding contract when: (i) Dingman offered to retain Giunta to provide consulting services, through M101 Group, for $150,000, plus an equity stake in OWH to be held by Giunta; and (ii) Giunta and M101 Group accepted Dingman's offer.  Giunta and M101 Group performed under their contract when they provided consulting services to Dingman relating to Dingman's hospitality venture in the Bahamas.  Dingman breached the contract because he failed to pay Giunta or M101 Group for their services or issue an equity stake in OWH to Giunta.  As a result, M101 Group and Giunta have been damaged.  For these reasons, Giunta and M101 Group have pled (and proven) their breach of contract claim on the basis of the admitted allegations and other evidence before the Court.

      4.     *Giunta's and M101 Group's Damages are Proven on the Current Record*

Based on an annual compensation of $90,000 per year, paid pro rata for Giunta's services from February 2, 2013 through May 8, 2014, minus $3,000, Dingman owes Giunta and M101 $110,424.70 under their contract.   Dingman also owes Giunta $2,499.27 in unreimbursed expenses plus prejudgment interest in the amount of $997.11.  *See* Giunta 2018 Decl. ¶ 6, Ex. A.

The most recent valuation of Giunta's ten percent equity stake in OWH, which is admitted by the defaulting defendants, is $150,000 as of December 17, 2013.  *See*, *supra*.

Giunta and M101 Group also seek prejudgment interest at a rate of nine percent pursuant to New York C.P.L.R. §§ 5001 & 5004, as well as post-judgment interest.

A hearing to determine damages is unnecessary.

Giunta also requests an award of reasonable attorney's fees for the same reasons that Gordon seeks an award of attorney's fees.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs Erik Gordon, M101 Group and Ryan Giunta respectfully request that the Court enter a Default Judgment as follows:

a)      On the First Claim, awarding Gordon damages in the amount of $343,000, plus prejudgment interest and post-judgment interest to the maximum extent permitted by law;

b)      On the Second Claim, awarding Gordon damages in the amount of $343,000, plus pre-judgment interest at the statutory rate of nine percent, plus post-judgment interest to the maximum extent permitted by law;

c)      On the Fourth Claim, awarding Gordon damages in the amount of $343,000, plus pre-judgment interest at the statutory rate of nine percent, plus post-judgment interest to the maximum extent permitted by law;

      d)      On the Fifth Claim, awarding Gordon damages in the amount of $343,000, plus pre-judgment interest at the statutory rate of nine percent, plus post-judgment interest to the maximum extent permitted by law;

      e)      On the Second Claim, awarding Giunta and M101 Group $262,923.97 in the amount of $490,536.06, including prejudgment interest, plus post-judgment interest to the maximum extent permitted by law; and

      f)      Awarding reasonable attorneys' fees to the extent the Court deems just and proper.

Dated:  New York, New York
          October 12, 2018

                                      **SULLIVAN & WORCESTER LLP**

                                By: /s/Harry H. Rimm
                                  Franklin B. Velie
                                  Harry H. Rimm
                                  Clark A. Freeman

                                  1633 Broadway
                                  New York, New York 10019
                                  (212) 660-3000
                                  hrimm@sandw.com
                                  fvelie@sandw.com
                                  cfreeman@sandw.com

                                  *Attorneys for Plaintiffs*

15